[No. 1369.]

LOUIS VOIGHT *v.* THE STATE.

1. THEFT—EVIDENCE.—See evidence held insufficient to establish the guilty knowledge and intent necessary to sustain a conviction for theft.
2. SAME—NEW TRIAL.—When the evidence of the main fact upon which a conviction was secured is sufficient only to establish a strong suspicion of the guilt of the accused, and the affidavit upon which his motion for new trial is based is sufficient to satisfactorily explain the suspicious circumstances, a new trial should be granted.  See this case in illustration.

APPEAL from the District Court of Tarrant.  Tried below before the Hon. A. J. Hood.

The indictment charged the appellant with the theft of one cow, the property of S. H. Mulkey. The venue was laid in Tarrant county, and the offense was charged to have been committed on the thirteenth day of March, 1882. The trial, which occurred at the ensuing June term of the court, resulted in the conviction of the appellant, and he was awarded a term of four years in the penitentiary as punishment.

S. H. Mulkey testified, for the State, that on Friday he missed his certain deep red cow, unbranded, but marked with two slits in each ear. On the following Sunday morning he recognized her hide and horns at the butcher shop of E. L. Cunningham, in Fort Worth. Cunningham's butcher shop is about one mile distant from his slaughter house. The witness resided in the city of Fort Worth, and the cow in question ranged from his house down into the valley around the said slaughter house. The animal was taken without the consent of the witness.

E. L. Cunningham testified for the State that, about nine or half-past nine o'clock on the night of the tenth of March, 1882, he discovered a light in his slaughter house. Approaching the house, he looked through the cracks and saw Albert Brookser and the defendant dressing a cow, and John Schweitzer holding a light for them to work by. The cow had been already skinned, and the carcass hung up. The witness went up to the party, and asked what they were doing, and where they got the cattle. The defendant answered: "We got them about two miles and a half out of town." The witness thereupon dispatched a boy named Albert Prince to the police station for officers to arrest the party for trespass, as he had previously forbidden Brookser and the defendant from using his pen for slaughtering purposes, and had, at the same time, directed Schweitzer, who was in his employ, to permit no one to use his pen or slaughter house. The witness did not then know that the cow being dressed had been stolen. Presently Marshal Farmer and Deputy Harrison of the police force arrived, and the latter entered the slaughter house and arrested the defendant and Schweitzer. Brookser was at the time outside, and upon the approach of the officers made off. Marshal Farmer and the witness attempted to arrest him, but the night was so dark that they could not overtake him, and he escaped. The only remark made by defendant when arrested was: "Brookser is the man; you ought to arrest him." The witness had previously employed the defendant, sometimes about his shop, and sometimes about the slaughter pen, slaughtering, but

had never had him regularly in his employ.   He, the defendant,
was at this time in the employ of Brookser.   In the opinion of
the witness, the defendant is a thief, and Brookser he knew to
be a thief.   All of the party, in his opinion, participated in the
theft of these cattle.   One of the cows had been shot.   Witness
did not state whether or not it was the cow in question.

The next morning the witness, with his brother-in-law, exam-
ined the ground, and he found the tracks of two men leading
through the grass into the slaughter pen, and he knew that these
tracks must have been made by Brookser and the defendant, be-
cause one of them was such as would be made by a number ten
scotch boot.   The other track the witness pronounced defend-
ant's, because an impression showed that it was made by a boot
or shoe run down at the heel, and such a shoe as was worn by
the defendant at the examining trial.   The witness had seen
Brookser wearing scotch boots, such as evidently made the
tracks first described.   The witness measured the tracks with a
stick, but had never measured the feet, or boots or shoes of
either Brookser or the defendant.   At the examining trial of the
defendant and Schweitzer, the witness looked at the stick and at
the shoes worn by the defendant, and in his opinion they corres-
ponded in length.   The witness has very good eyesight.

The tracks of the two men came straight from a gap across
the pen to another gap near the slaughter house, and the tracks
of the two cows were right along with those of the men.   The
witness declared that the cows must have been led into the pen,
because, if driven, the tracks would not have been so nearly in
a regular line.   The witness followed the tracks of the men and
cows from the outside gap back into the valley towards the river
bottom for a distance of about fifty yards, when he stopped be-
cause of the depth of the mud.   The witness did not usually
drive cattle into his pen through this outside gap, but through a
gate near the slaughter house.   The witness sometimes rented
his slaughter house to butchers for slaughtering purposes.
Brookser was a butcher, and had slaughtered there two or three
times with the permission of the witness, but, because he had
killed one of witness's hogs, he had been forbidden to come
about the place.

Albert Prince testified for the State that he was in the employ
of E. L. Cunningham, a butcher, of Fort Worth.   On the night
of the tenth of March, 1882, he and Mr. Cunningham discovered
a light in the slaughter house of the latter.   They approached

the light in company, and looking through the cracks they saw Albert Brookser and the defendant engaged in skinning a cow. John Schweitzer held a light for them while they worked.

Mr. Cunningham sent the witness to town for officers to arrest the parties. The witness got Marshal Farmer and Mr. Harrison, and returned with them to the slaughter house in a hack.

The witness was about the slaughter house several times that day, during which time two or three head of cattle were slaughtered for Mr. Cunningham. He was at the slaughter house in the afternoon before the arrest of the defendant and Schweitzer, and saw Brookser and the defendant there for a time. They came to the slaughter house from towards town, one of them having a rope and the other a pistol. They left the slaughter house presently, going towards the valley. They returned after a time, bringing with them neither rope nor pistol, that witness could see.

Previous to this time, the defendant had worked for Mr. Cunningham, off and on, mostly at the butcher shop, but occasionally at the slaughter house. At this time he was working for Brookser, for whom he killed cattle whenever sent for. He had killed cattle for Brookser at Cunningham's slaughter house before this.

A negro boy in the employ of Cunningham testified that he was about the slaughter house the whole of the day preceding the night upon which this offense was alleged to have been committed. It was his usual working place, and he generally went home about dark. In the afternoon of that day he saw the defendant and Brookser leave the slaughter pen and go towards the valley, but did not see them return. About dark John Schweitzer told the witness that they had no further work for him that day, and that he could go home. Schweitzer directed the witness to say that he would not "go up" that night, but would go home to supper.

Deputy Marshal Steward Harrison testified as follows: "On Saturday, the tenth day of March, 1882, I went out in company with Marshal Farmer and Albert Prince, a boy who came for us at the instance of Mr. E. L. Cunningham, to arrest some parties at his slaughter house. When we arrived at the slaughter house I went to the door and arrested Louis Voight and John Schweitzer. They made no resistance, and did not attempt to escape. Louis Voight said: 'If there is anything wrong, Albert Brookser is to blame. I am in his employ.' This was all he said."

E. L. Cunningham was recalled by the State, and testified that when he went into the house that night and asked the party where they got the cattle, and was answered by the defendant that they got them about two miles and a half out of town, he asked: "Did you get them from Bowles?" and Brookser answered "no." The witness asked this question because the cows slaughtered looked like milch cows, and Bowles was a milkman. None of the party told the witness from whom the cows were procured. One of the animals slaughtered was a nice, red unbranded cow, marked with two slits in each ear. Her hide and horns were recognized and claimed by S. H. Mulkey as his, next morning, at the witness's butcher shop. The other was a light brown line-backed cow with one horn broken. The witness placed the hides of both on exhibition next day at his butcher shop, and advertised them in the Fort Worth Democrat.

Henry Casing testified, for the defense, that he was acquainted with the defendant and had known him since 1867, since which time his general reputation had been good. The defendant worked for Cunningham for a while, and afterwards for Brookser. He had slaughtered at Cunningham's pen, with the latter's consent, for Brookser two or three times. The witness knew that Brookser had Cunningham's consent to slaughter at his pen, because he had heard him say that Brookser did not leave the offal at the pen as other parties did, but that if he, Brookser, ever did leave the offal, he could not again use the pen. The witness was a butcher, and he and Brookser at one time butchered together.

Chris. Rintleman, for the defense, testified that he had known the defendant for nine or ten years in Dallas and Fort Worth. In the former place his reputation was "A 1." In Dallas he had charge of a large butcher-market, kept the cash, and controlled everything.

Two or three other witnesses introduced by the defense testified to the reputation of the defendant, pronouncing it good.

The affidavit of John Schweitzer, upon which the appellant based his motion for new trial, and which is the subject of the principal ruling of this court, is as follows:

"I am a resident of Fort Worth, Tarrant county, State of Texas, and was a resident of the said city about the tenth day of March, 1882. On the evening of the said day, I was arrested, together with Louis Voight, at the slaughter house of E. L. Cun-

ningham, of the city of Fort Worth, charged with stealing a cow, alleged to be the property of one S. H. Mulkey.

"I hereby testify that Louis Voight and myself were at the slaughter house of the said E. L. Cunningham, on the said tenth day of March, continuously from three o'clock or four o'clock p. m., until arrested. That about seven o'clock p. m. Louis Voight, Albert Brookser and myself started to town, when I recollected that I had left behind in the slaughter house my vest and watch. I returned to get the said watch and vest, when I discovered that a barrel of tallow was leaking, and I called to Louis Voight and Brookser that I would have to empty the tallow before I could go, upon which Louis Voight returned to wait for me, and Brookser went off. We stayed there emptying tallow about half or three-quarters of an hour, when we both started home together. About fifty yards from Cunningham's slaughter house we met Brookser coming back alone with two candles in his hands. He said: 'I met those two men I told you this evening I expected with cattle; they will soon be here. John (talking to me), come back and help Louis and me kill the cattle. The men took them to my pen, but the slaughter house was locked, and I have not the keys, so we will have to kill them here.' We three, Voight, Brookser and I, then walked back to the slaughter house, and I fixed the shute to receive the cattle, while Brookser and Voight went to let them in. About that time the cattle were driven up by two men on horseback, and driven in the shute. This was about eight o'clock. These men on horseback had two cows and one steer, and as they drove the cattle in, they hallooed to Brookser: 'Turn that steer out.' I, John Schweitzer, then turned the steer out, while Brookser and Voight killed the cows.

"After driving the steer out, I returned to the slaughter house. The men on horseback then left, without saying anything more. I held the light then, while Brookser and Louis skinned and dressed the cattle. Louis Voight was at this time in the employ of Brookser. Brookser said nothing as to where he got the cattle, and we, that is, Louis Voight and I, knew nothing about where they came from.

"About half-past eight o'clock, when we had about finished dressing one cow, Mr. E. L. Cunningham and a stranger and Albert Prince came up. Cunningham asked Brookser where he got the cattle. Brookser replied: 'I got them from some men about two miles out from town.' That was the first intimation

we had as to where the cattle came from. I did not see Albert Prince around any more until we started with the officer to town after our arrests. The cattle were not shot at all, but were knocked in the head with an ax. Brookser had brought Louis Voight down to Cunningham's slaughter house about one or two o'clock to kill these cattle, and they did not arrive until the hour above stated. In the mean time Louis Voight helped me make head cheese. I never saw Mr. Mulkey's cow in my life. When one of the officers came in the door of the slaughter house, and told us we were under arrest, Brookser was outside after water, and did not return. I asked the officers what was the matter. Mr. Cunningham said he wanted to see where these cattle came from. Louis Voight spoke up and said they had better catch Brookser; if there was anything wrong, Brookser was the man to blame; that he was in Brookser's employ."

*W. Sorley* and *R. A. Rogers*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

HURT, J. Appellant, Louis Voight, and John Schwietzer were jointly or separately (the record does not show which) indicted for the theft of a cow belonging to S. H. Mulkey. Voight was separately tried, convicted, and appeals. Schwietzer was tried at the same term and acquitted, and his affidavit was relied upon by the appellant in his motion for a new trial.

Two questions are presented for our discussion: 1. Does the evidence support the verdict? 2. Did the court err in refusing a new trial, based upon the affidavit of Schwietzer? The evidence clearly shows that Voight was the servant or employe of one Albert Brookser, who was engaged in the slaughtering business.

The issue was then presented (he, the defendant, being caught assisting in the slaughter of the stolen cow) touching the defendant's knowledge of the fraudulent intent and purposes of those with whom he was engaged. The evidence, viewed separately from the facts contained in the affidavit of Schweitzer, does not, in our opinion, carry the case beyond one of strong suspicion. Viewed in the light of this affidavit, the suspicious facts are very satisfactorily explained and lose their criminating tendency.

We are therefore of the opinion: First. That the evidence does

not support the verdict. Second. That the court below should have granted a new trial under the facts in this case, based upon the evidence contained in the affidavit of Schweitzer.

The Reporters will give the evidence in full.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered October 14, 1882.